**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Mar 14 2012, 9:12 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL B. TROEMEL**
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
**DAVID E. COREY**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF M.J., MINOR CHILD, AND HER MOTHER, C.J., | ) ) ) ) ) | |
| C.J. | ) ) | |
|     Appellant-Respondent, | ) ) | |
|       vs. | ) ) | No. 79A05-1109-JT-502 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
|     Appellee-Petitioner. | ) ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Loretta H. Rush, Judge
The Honorable Faith Graham, Magistrate
Cause No. 79D03-1105-JT-50

**March 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent C.J. ("Mother") appeals the juvenile court's order terminating her parental rights to M.J. Mother alleges that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of her parental rights. Concluding that the evidence was sufficient to support the termination of Mother's parental rights, we affirm.

## FACTS AND PROCEDURAL HISTORY

Mother has one child, M.J., at issue in this appeal.[1] M.J. was born on December 6, 1998. DCS first became involved with M.J. after receiving reports that (1) M.J. was late to school and Mother was drunk; (2) Mother was so drunk that she defecated in bed; (3) an adult male who had battered Mother a few weeks earlier, and against whom a protective order was in place, was back in the home and M.J. was frightened; (4) Mother was hiding drugs in and selling drugs from her home; and (5) a search of Mother's home revealed 2.92 grams of marijuana and certain drug paraphernalia. On February 16, 2010, DCS filed a petition alleging that M.J. was a child in need of services ("CHINS").

In addition to the above-stated allegations, with respect to Mother, the CHINS petition alleged that M.J.'s "physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of [Mother] to supply [M.J.] with

---

[1] The termination of the parental rights of M.J.'s father is not at issue in this appeal.

necessary food, clothing, shelter, medical care, education or supervision." DCS Exhibit 2.

Mother appeared and entered an admission to the CHINS allegations. In light of Mother's

admission, the juvenile court found M.J. to be a CHINS, appointed a Court Appointed

Special Advocate ("CASA") for M.J., and maintained M.J.'s placement in relative care.

On May 12, 2011, DCS filed a petition seeking the termination of Mother's parental

rights to M.J. On July 7, 2011, the juvenile court conducted an evidentiary termination

hearing at which Mother appeared and was represented by counsel. During the termination

hearing, DCS introduced evidence relating to Mother's failure to remedy the conditions

leading to M.J.'s removal and her substantial drug and alcohol abuse, including Mother's

failure to complete services and counseling offered by DCS, her recent positive drug screens,

her termination from at least one drug treatment program due to her continued drug use, and

her refusal to discontinue a historically abusive domestic relationship. DCS also provided

evidence indicating that its plan for the permanent care and treatment of M.J. was adoption.

On July 28, 2011, the juvenile court terminated Mother's parental rights to M.J. Mother now

appeals.

**DISCUSSION AND DECISION**

The Fourteenth Amendment to the United States Constitution protects the traditional

right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of*

*Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the

parent-child relationship is "one of the most valued relationships of our culture." *Id.*

However, although parental rights are of a constitutional dimension, the law allows for the

termination of those rights when a parent is unable or unwilling to meet her responsibility as

3

a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

Mother contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating her parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only

4

if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:
    (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
    (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
    (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B) that one (1) of the following is true:
    (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
    (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
    (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
(C) termination is in the best interests of the child; and
(D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2010). Specifically, Mother claims that DCS failed to establish that either (1) the conditions that resulted in the M.J.'s removal or the reasons for her placement outside of Mother's care will not be remedied; or (2) the continuation of the

parent-child relationship posed a threat to M.J.'s well-being. Mother also claims that DCS

failed to establish that it had a satisfactory plan in place for the care and treatment of M.J.

### A. Conditions Resulting in Removal Not Likely to be Remedied

In arguing that DCS failed to establish by clear and convincing evidence that the

conditions resulting in M.J.'s removal from her care will not be remedied and that the

continuation of the parent-child relationship poses a threat to M.J., Mother fails to

acknowledge that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the

disjunctive, the juvenile court need only find *either* that the conditions resulting in removal

will not be remedied *or* that the continuation of the parent-child relationship poses a threat to

the children. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore,

"where, as here, the trial court specifically finds that there is a reasonable probability that the

conditions which resulted in the removal of the child would not be remedied, and there is

sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for

[DCS] to prove or for the trial court to find that the continuation of the parent-child

relationship poses a threat to the child." *In re S.P.H.*, 806 N.E.2d at 882. In order to

determine that the conditions will not be remedied, the juvenile court should first determine

what conditions led DCS to place M.J. outside of Mother's care, and, second, whether there

is a reasonable probability that those conditions will be remedied. *Id*.

When assessing whether a reasonable probability exists that the conditions justifying a

child's removal and continued placement outside her parent's care will not be remedied, the

juvenile court must judge the parent's fitness to care for her child at the time of the

termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court found that DCS presented sufficient evidence to prove that the conditions that resulted in M.J.'s removal from Mother's care were not likely to be remedied, and upon review, we conclude that the juvenile court's finding to this effect is supported by the record. The record reveals that although Mother completed some services early on, she did not successfully complete the services offered by DCS. As the CHINS proceedings progressed, Mother failed to attend counseling sessions, hearings, and visitation sessions.

The record further reveals that Mother had a history of substance abuse issues, which continued throughout the CHINS and termination proceedings. Mother continued to test positive for illegal substances in violation of court orders. Mother was terminated from at least one substance abuse treatment program during the course of the CHINS proceedings due to her continued drug use. In addition, Mother refused to discontinue a domestic relationship which was historically abusive. Mother's actions reflected ambivalence on

7

Mother's part as well as an unwillingness to modify her behavior so as to provide M.J. with a safe and secure lifestyle.

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in M.J.'s removal from Mother's care will not be remedied. It was within the province of the juvenile court, as the finder of fact, to minimize any contrary evidence of changed conditions in light of its determination that Mother's failure to provide a safe, stable, and drug free living environment which led to M.J.'s removal was unlikely to change. *See In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*.

Moreover, contrary to Mother's claim that the juvenile court "pulled the plug prematurely" in light of evidence that she claims shows she was working to change her home environment, Appellant's Br. p. 18, it is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Mother. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Mother's claim effectively amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

Under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in M.J.'s removal would

be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997). Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to the children's well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

## B. Satisfactory Plan for Care and Treatment of M.J.

Mother also claims that DCS failed to establish that it had a satisfactory plan for the care and treatment of M.J. In making this argument, Mother concedes that DCS's stated plan was for adoption, but argues that the plan was unsatisfactory because the plan did not outline specifically who would be adopting M.J.

> In order for the trial court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *Id.*

*In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). "Attempting to find suitable parents to adopt the child[] is clearly a satisfactory plan." *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 375 (Ind. Ct. App. 2007) (citing *Matter of A.N.J.*, 690 N.E.2d at 722). "The fact that there was not a specific family in place to adopt the child[] does not make the plan unsatisfactory." *Id.* (citing *In re B.D.J.*, 728 N.E.2d 195, 204 (Ind. Ct. App. 2000)).

9

Here, it is undisputed that DCS's plan for M.J.'s care and treatment was for adoption. At the time of the termination hearing, DCS was in the process of approving a relative to adopt M.J. The fact that DCS did not, at the time of the termination hearing, have a specific family member in place to adopt M.J. does not make the plan unsatisfactory. *See id.* Thus, we conclude that DCS, by demonstrating that its plan for the care and treatment of M.J. was adoption, satisfied the statutory requirement set forth under Indiana Code section 31-35-2-4(b)(2)(C).

Having concluded that the evidence was sufficient to prove the statutory requirements set forth in Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and BARNES, J., concur.