690 N.E.2d 716 (1997)
In the Matter of the Termination of the Parent-Child Relationship of A.N.J. and T.R.J.
Harold W. JOHNSON, Father, Appellant-Respondent,
v.
RUSH COUNTY DIVISION OF FAMILY AND CHILDREN, Appellee-Petitioner.
No. 70A04-9708-JV-369.
Court of Appeals of Indiana.
December 22, 1997.
Publication Ordered January 21, 1998.
*717 Jeffrey S. Neel, Wolf & Burrow, Greenfield, for Appellant-Respondent.
William B. Keaton, Keaton & Keaton, P.C., Rushville, for Appellee-Petitioner.

OPINION
DARDEN, Judge.

STATEMENT OF THE CASE
Harold Johnson appeals the trial court's termination of the parent-child relationship with his daughters, A. and T. We affirm.

*718 ISSUES

1. Whether the trial court erred in failing to appoint counsel for Harold before the Rush County Division of Family and Children presented its case in chief in a hearing for which Harold failed to appear.
2. Whether there is sufficient evidence to support the termination of the parental relationship.

FACTS
Harold and Melissa Johnson were married in April 1989. Their daughter A. was born in May 1989, and their daughter T. was born in January 1992. In November 1992, Melissa began a sexual relationship with neighbor Donald Ervine, and in March 1993, Harold, Melissa and the girls moved to Pennsylvania. Ten days later, Melissa insisted that the family move back to Indiana because she missed her family. When Harold, Melissa and the girls arrived by bus in Indiana, Melissa told Harold that she had returned to Indiana to be with Ervine. Harold left his daughters with Melissa and took the next bus back to Pennsylvania.
In May 1993, Melissa and the girls moved back to Pennsylvania to live with Harold. Three weeks later, Ervine convinced Melissa to return to Indiana, and she took the girls with her. In August 1993, A. was placed in foster care after Ervine beat her with a stick. Both Melissa and Ervine were charged with child endangerment. T. was placed in foster care in October 1993, after being found naked in the attic with no food or blankets.
Both girls were subsequently adjudicated to be Children in Need of Services ("CHINS"). In a January 1994 dispositional order, Harold was ordered to attend and successfully complete parenting classes and to be evaluated for substance abuse by a qualified mental health facility.[1] Melissa was ordered to attend counseling at an approved mental health facility, and to attend and successfully complete parenting classes.
In February 1994, Melissa moved back to Pennsylvania to be with Harold. The children remained in foster care in Indiana. A few months later, Melissa returned to Indiana to be with Ervine. In July 1994, the Rush County Division of Family and Children ("DFC"), placed the children with Harold in Pennsylvania. The Chester County Department of Children, Youth and Families ("DCYF"), agreed to monitor the girls' placement. In September 1994, Harold lost his job and was unable to find another one. He subsequently moved in with his mother and took the girls to the Chester County DCYF. The girls were placed in foster care in Pennsylvania in November 1994.
In March 1995, Harold contacted the Rush County DFC and told the caseworker that he was moving to California to look for a job. DFC immediately asked the trial court to order the return of the girls to Indiana so that DFC could better supervise the case. The girls were subsequently returned to Rush County and placed in foster care. Melissa began visiting the girls and complying with the January 1994 dispositional order, and the girls were returned to her on January 12, 1996. However, in October 1996, Melissa signed a voluntary relinquishment of parental rights, and the girls were returned to foster care.
Later that month, DFC Caseworker Robert Allen informed Harold that DFC had never received documentation regarding Harold's compliance with the January 1994 dispositional order. Allen further told Harold that DFC planned to file a petition to terminate his parental rights. DFC filed the petition on October 30, 1996. On November 7, 1996, DFC sent Harold a copy of the petition and a summons via certified mail return receipt requested, which Harold received, and which provided in pertinent part as follows:
You are hereby notified that a Petition to Terminate Parental Rights has been filed in this cause.
The nature of the Petition to Terminate Parental Rights is stated in the petition which is attached to this Summons. It also states the relief sought by the Rush County Office of Family and Children.

*719 An Answer or other appropriate response in writing to the Petition must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by the Petitioner.
(R. 16).
The trial court held a hearing on the petition on January 29, 1997. Harold had received prior notice of the hearing date; however, he did not appear. At the hearing, DFC admitted into evidence all of its records, including predispositional reports and reports to the court, regarding A. and T. Further, caseworker Robert Allen testified that Harold had not produced any documentation that he had complied with the terms and conditions of the January 1994 dispositional order. Allen had been requesting this documentation for more than a year. Allen had recently spoken with Harold and told him to produce some documentation that he had made efforts to comply with the dispositional order or the termination hearing would proceed. Allen further testified that neither girl had a parental bond with her father, and that DFC's plan for the care and treatment of the children was adoption.
At the close of the hearing, the trial court appointed an attorney to represent Harold, and set the matter for an additional hearing. On February 10, 1997, Harold, by counsel, filed a motion to vacate the evidence at the January 29 hearing. The motion provides in pertinent part as follows:
1. Harold W. Johnson, father, was not present at said hearing;
2. Counsel for father was not appointed until after the evidence was submitted at the hearing;
3. Harold W. Johnson opposes the termination of his parental rights; and
4. Fundamental fairness and due process necessitate that the evidence be vacated and that the father and counsel be present at any hearing in regards to the termination of the parental rights of Harold W. Johnson.
(R. 37). Harold never explained why he was not present at the hearing.
The trial court held the second hearing on the petition to terminate Harold's parental rights on April 16, 1997, and Harold appeared by counsel. Counsel asked the court to rule on his motion to vacate the evidence, and the court denied the motion. However, the court told counsel that he and Harold could listen to the tapes of the January 29 hearing, and if counsel had specific objections, the court would entertain them. Further, the court asked Harold if he had any specific objections to the exhibits which had been admitted into evidence. Harold responded that he did not, and the court proceeded with the second hearing.
DFC had no further evidence to present. In his case in chief, Harold testified that he had complied with the requirements of the 1994 dispositional decree, but was unable to locate the documents which would confirm his compliance. Harold further testified that he and a business associate own a 15 bed coed halfway house for drug and alcohol addicts who have completed a treatment program at a rehabilitation center. The age of the residents ranges from 25 to 49. The house is located in Palmdale, California, approximately 40 miles from Los Angeles. According to Harold, A. and T. would be staying in his private living quarters in the house.
The evidence at the hearing further revealed that, at the time of the hearing, Harold had not seen his daughters for two years. In addition, in March 1994, the court ordered Harold to pay $51.00 per week in child support for A. and T. Harold had paid nothing during those three years. The Guardian Ad Litem, ("GAL"), who was appointed to represent the children's interests, testified that the girls had bonded with their foster family and had no interest in living with their father. The GAL recommended the termination of Harold's parental rights.
The trial court interviewed the girls in camera the following day. On May 9, 1997, the court entered an order terminating Harold's parental rights. It is from that order that Harold appeals.

*720 DECISION

I. Appointment of Counsel
Harold first contends that the "trial court committed reversible err[or] by not appointing counsel to represent the father prior to the division resting its case." Harold's Brief, p. 6. We disagree.
In Indiana, the right to counsel in proceedings to terminate parental rights is granted by statute. Ind.Code 31-6-3-2(c); Taylor v. Scott, 570 N.E.2d 1333, 1334 (Ind.Ct.App. 1991), trans. denied. In order to protect the right, our statutes also provide that the trial court must inform the parents in involuntary termination cases both of their right to be represented by counsel and their right to appointed counsel if they are indigent. Id.
In Taylor, the trial court terminated the father's parental rights. On appeal, we reversed the termination because father, who appeared at the hearing, was never informed of his right to counsel. However, here, Harold did not appear at the January hearing. Because Harold failed to appear, the trial court did not inform him of his statutory rights and could have entered judgment against him. See Abell v. Clark Co. Dept. of Public Welfare, 407 N.E.2d 1209 (Ind.Ct. App.1980). Therefore, the trial court did not err in failing to appoint counsel for Harold before DFC presented its case in chief.
We further note that Harold has not shown how he was prejudiced by the trial court's alleged error. Specifically, the trial court permitted Harold to listen to a tape of the January hearing, and to raise specific objections. Harold raised none. The trial court also asked Harold if he had any objections to the exhibits which had been admitted into evidence. Harold had none. We find no error.
II. Sufficiency of the Evidence
The purpose of terminating parental rights is not to punish parents but to protect their children. J.L.L. v. Madison County Dept. of Pub. Welfare, 628 N.E.2d 1223, 1226 (Ind.Ct.App.1994). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parties are unable or unwilling to meet their responsibility as parents. Id.
When a county office of family and children seeks to terminate parental rights, the office must plead and prove that:
(1) The child has been removed from the parent for at least six (6) months under a dispositional decree;
(2) There is a reasonable probability that:
(A) The conditions that resulted in the child's removal or the reasons for placement outside the parent's home will not be remedied; or
(B) The continuation of the parent-child relationship poses a threat to the well-being of the child;
(3) Termination is in the best interests of the child; and
(4) There is a satisfactory plan for the care and treatment of the child.
Ind.Code 31-6-5-4(c). These allegations must be established by clear and convincing evidence. Ind.Code 31-6-7-13(a).
In reviewing the termination of parental rights, we will neither reweigh the evidence nor judge the credibility of witnesses. Matter of M.B., 666 N.E.2d 73, 76 (Ind.Ct.App.1996), trans. denied. We consider only the evidence most favorable to the judgment. Id.
Harold argues that there is insufficient evidence to support the involuntary termination of his parental rights. Specifically, he first contends that the State failed to prove that his children have been removed from him for at least six months under a dispositional decree. Because he has failed to provide us with cogent argument and authority to support his proposition, Harold has waived appellate review of this argument. See Browning v. Walters, 616 N.E.2d 1040 (Ind.Ct.App.1993).
Waiver notwithstanding, Harold's argument is without merit. A. and T. were removed from their home in 1993. In a January 1994 dispositional decree, the trial court found that the children continued to need placement outside the home in order to insure their safety. The termination hearing was held in 1997. Although the children *721 were returned to their father for a five-month period, and to their mother for a nine-month period, the remaining two to three years were spent in foster care pursuant to a dispositional decree. Clearly, the children were removed from Harold for at least six months under a dispositional decree.
Harold next contends that the State failed to prove that there was a reasonable probability that the conditions that resulted in the child's removal would not be remedied. We disagree.
To determine whether the conditions are likely to be remedied, the trial court must judge a parent's fitness to care for the child as of the time of the termination hearing and take into account any evidence of changed conditions. Wardship of J.C. v. Allen County Office of Family and Children, 646 N.E.2d 693, 694 (Ind.Ct.App.1995), reh'g denied, trans. denied. The court must also evaluate the parent's patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. Id.
Here, the evidence reveals that a January 1994 dispositional decree ordered Harold to attend and successfully complete parenting classes and to be evaluated for substance abuse by a qualified mental health facility. In July 1994, the Rush County DFC placed the children with Harold in Pennsylvania. The Chester County DCYF agreed to monitor the girls' placement. In September 1994, Harold lost his job and was unable to find another one. He subsequently moved in with his mother and took the girls to the Chester County DCYF. The girls were placed in foster care in Pennsylvania in November 1994.
In March 1995, Harold contacted the Rush County DFC and told the caseworker that he was moving to California to look for a job, and DFC immediately asked the trial court to order the return of the girls to Indiana so that DFC could better supervise the case. The girls were subsequently returned to Rush County and placed in foster care. More than a year later, in October 1996, DFC caseworker Allen informed Harold that DFC had never received documentation regarding Harold's compliance with the January 1994 dispositional order. Allen further told Harold that DFC planned to file a petition to terminate his parental rights. DFC filed the petition on October 30, 1996.
The trial court, after giving notice to Harold, held the first hearing on the petition in January 1997. At the hearing, which Harold failed to attend, caseworker Allen testified that Harold had not produced any documentation that he had complied with the terms and conditions of the January 1994 dispositional order. Allen had been requesting this documentation for more than a year. Allen had recently spoken with Harold and told him to produce some documentation that he had made efforts to comply with the dispositional order or the termination hearing would proceed. Allen further testified that neither girl had a parental bond with her father.
The trial court held the second hearing on the petition in April 1997. At that time, Harold testified that he and a business associate own a 15 bed co-ed halfway house for drug and alcohol addicts who have completed a treatment program at a rehabilitation center. The age of the residents ranges from 25 to 49. The house is located in Palmdale, California, approximately 40 miles from Los Angeles. According to Harold, A. and T. would be staying in his private living area in the house.
The evidence further revealed that, at the time of the hearing, Harold had not seen his daughters for two years. In addition, in March 1994, the court ordered Harold to pay $51.00 per week in child support for A. and T. Harold had paid nothing. The GAL testified that the girls had bonded with their foster family and had no interest in living with their father. She further recommended the termination of Harold's parental rights.
Recognizing our deferential standard of review, we find that this evidence supports the trial court's finding that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied.[2]
*722 Harold also contends that there is insufficient evidence that the termination of the parent-child relationship is in the best interests of A. and T. We have previously stated that a "parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that the continuation of the parent-child relationship is contrary to the child's best interests." Matter of Adoption of D.V.H., 604 N.E.2d 634, 638 (Ind.Ct.App.1992), trans. denied. Harold has historically been unable to provide adequate housing, stability and supervision. Further, testimony at the termination hearing reveals that he is currently unable to provide the same. We therefore cannot agree with Johnson's contention.
Lastly, Harold contends that DFC failed to establish that there is a satisfactory plan for the care and treatment of his children. Again, we disagree.
At the hearing on DFC's petition to terminate Harold's parental rights, caseworker Allen testified that the plan for the care and treatment of Harold's children is adoption. This is a satisfactory plan. See J.K.C. v. Fountain County Department of Public Welfare, 470 N.E.2d 88 (Ind.Ct.App.1984). We find no error.
We reverse a termination of parental rights "only upon a showing of `clear error' that which leaves us with a definite and firm conviction that a mistake has been made." Egly v. Blackford County DPW, 592 N.E.2d 1232, 1235 (Ind.1992). We find no such error here, and the trial court's judgment is affirmed.
RILEY and FRIEDLANDER, JJ., concur.

ORDER
This Court having heretofore handed down its opinion in this cause on December 22, 1997, marked "NOT FOR PUBLICATION"; and
The appellee, by counsel, having thereafter filed its Petition to Publish Opinion, alleging therein that the decision in this case clarifies a rule of law regarding when counsel must be appointed in involuntary termination proceedings and praying the Court to order its decision published, which said petition is more particularly in the following words and figures, to-wit:

(H.I.)
And the Court, having examined said petition and being duly advised, now finds that the appellee's Petition to Publish Opinion should be granted and that this Court's opinion in this appeal should now be ordered published.
IT IS THEREFORE ORDERED as follows:
1. The appellee's Petition to Publish Opinion is granted and this Court's opinion heretofore handed down in this cause on December 22, 1997, marked "NOT FOR PUBLICATION" is now ordered published.
NOTES
[1] Harold has a prior drug conviction, and he was arrested for invasion of privacy in December 1992 and in March 1993.
[2] Harold further argues that DFC "failed to prove that the continuance of the parent-child relationship poses a threat to the well-being of the child." Harold's Brief, p. 10. However, where the trial court specifically finds that there is a reasonable probability that the conditions which resulted in the removal of the child would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for the DFC to prove or for the trial court to find that the continuation of the parent-child relationship poses a threat to the child. Knott v. Tippecanoe D.P.W., 632 N.E.2d 752, 756 (Ind.Ct.App.1994). Thus, because we affirm the trial court's finding that there is a reasonable probability that the conditions which resulted in the removal of the children would not be remedied, we need not address Harold's contention that DFC failed to prove a reasonable probability that the continuation of the parent-child relationship poses a threat to the child.