**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Department of Child Services
Central Administration
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

FILED
Jun 12 2012, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF V.B., MINOR CHILD, AND HER FATHER, R.B., | ) ) ) ) ) | |
| R.B. | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 49A05-1111-JT-654 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Judge *Pro Tempore*
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1007-JT-26401

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Respondent R.B. ("Father") appeals the juvenile court's order terminating his parental rights to V.B. Father alleges that the Indiana Department of Child Services ("DCS") did not provide sufficient evidence to support the termination of his parental rights. Concluding that the evidence was sufficient to support the termination of Father's parental rights, we affirm.

## FACTS AND PROCEDURAL HISTORY

Father has one child, V.B., at issue in this appeal.[1] V.B. was born on September 29, 2009. V.B. was found to be in need of services on November 3, 2009, and the trial court formally removed V.B. from Mother's care. Father was added to the CHINS action on February 16, 2010. On May 25, 2010, V.B. was formally removed from Father's care.

DCS presented evidence demonstrating that Father was ordered to successfully complete home-based counseling and therapy, domestic violence classes, a drug and alcohol assessment (and follow any resulting recommendations), a parenting assessment, random drug screens, and visitation. Father completed a drug and alcohol assessment but was discharged from his intensive outpatient substance abuse program.

Father commenced home-based services in June of 2010. Father's home-based

---

[1] The termination of the parental rights of V.B.'s mother, who has a total of ten children, is not at issue in this appeal.

therapy goals included working on anger management, coping skills, forgiveness issues, and relationships. Father's home-based services commenced in June of 2010, with goals of visitation, demonstrating more effective parenting skills, eliminating the use of illegal substances, and establishing and maintaining financial stability.

Father's visitation with V.B. was suspended at the end of July of 2010. The CHINS court authorized that visitation could resume upon Father providing three clean drug screens. Visitation was never resumed and the last sanctioned visit between V.B. and Father was on July 23, 2010. The home-based services were closed unsuccessfully due to Father no longer wanting to work on the above-mentioned goals. Home-based therapy was closed unsuccessfully in October of 2010, due to Father's refusal to participate further in services until "DCS made things right." Petitioner's Exhibit 48. At the time Father's home-based services were closed, both DCS case manager John Buckingham and home-based therapist Teresa Land had concerns of V.B.'s safety in Father's home due to Father's anger management issues, his drug use, and the other conditions, namely domestic violence and mental health issues, not being eliminated.

On July 11, 2011, DCS filed a petition seeking the termination of Father's parental rights to V.B. On October 19, 2011, the juvenile court conducted an evidentiary termination hearing at which Father appeared and was represented by counsel. During the termination hearing, DCS introduced evidence relating to Father's failure to complete the services offered by DCS and to remedy the conditions keeping V.B. from being placed in his care. DCS also provided evidence indicating that its plan for the permanent care and treatment of

V.B. was adoption. On October 26, 2011, the juvenile court terminated Father's parental rights to V.B. Father now appeals.

## DISCUSSION AND DECISION

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the child's interest in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

The purpose of terminating parental rights is not to punish the parent but to protect the child. *Id*. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the child is irreversibly harmed such that her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879

4

(Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

(A) one (1) of the following exists:
(i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
(ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
(iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
(B) that one (1) of the following is true:
(i) There is a reasonable probability that the conditions that resulted in the child's removal *or* the reasons for placement

> outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) termination is in the best interests of the child; and
> (D) there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011) (emphasis added). Specifically, Father claims that DCS failed to establish that the conditions that resulted in the V.B.'s removal or the reasons for her placement outside of his care will not be remedied. In making this claim, Father argues that the evidence is insufficient to prove that V.B. was ever in his custody and care. Father also argues that he paid support to Mother and participated in and completed some of the services offered by DCS.

**A. Conditions Resulting in Removal Not Likely to be Remedied**

Initially we note that Father does not challenge any of the juvenile court's findings or conclusions relating to the probability that the conditions resulting in V.B.'s continued placement outside his care will not be remedied. Father instead argues that the evidence is insufficient to support the termination of his parental rights because DCS failed to prove that V.B. was ever in Father's custody or care.[2] We disagree.

In order to determine that the conditions will not be remedied, the juvenile court should first determine what conditions led DCS to place V.B. outside of Father's care, and, second, whether there is a reasonable probability that those conditions will not be remedied.

---

[2] Father does not point to any authority suggesting that DCS was required to prove that V.B. had formally been placed in Father's custody or care.

6

*In re S.P.H.*, 806 N.E.2d at 882. When assessing whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside her parent's care will not be remedied, the juvenile court must judge the parent's fitness to care for his child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court's findings provide, and the record reveals, that the reasons for V.B.'s continued placement outside Father's care remain and are unlikely to be remedied. The juvenile court found that Father's home-based services were terminated unsuccessfully. Father's visitation with V.B. was suspended in July of 2010, and has not been resumed. Father has denied using drugs, but has repeatedly tested positive for drugs, including cocaine. The record further reveals that Father continues to suffer from anger management issues as is evidenced by his attempts to challenge DCS case manager Buckingham to fights following court appearances and his habit of leaving threatening messages for DCS case manager

7

Buckingham. Both DCS case manager Buckingham and home-based therapist Land expressed concerns for V.B.'s safety in Father's care because of his ongoing anger management issues and drug use. Father has openly admitted to DCS case manager Buckingham that he has previously, if not currently, been a member of a hate organization, and claimed to have worked for the Grand Dragon of the Ohio Ku Klux Klan as a teenager. The record also reveals that Father has a lengthy history with DCS, has had his parental rights to at least three other children terminated, and has refused to participate in continued services until DCS "makes things right." Petitioner's Ex. 48.

When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in V.B.'s continued placement outside Father's care will not be remedied. Moreover, to the extent that Father claims that he paid support to Mother and participated in and completed some of the services offered by DCS, we observe that Father does not challenge the juvenile court's findings regarding the numerous services that were terminated unsuccessfully by the service providers. Father's claim effectively amounts to an invitation for this court to reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879. As such, under these circumstances, we cannot say that the juvenile court erred in determining that DCS established that it is unlikely that the conditions resulting in V.B.'s placement outside of Father's care would be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997).

Furthermore, to the extent that Father's argument may be construed as a challenge to

the evidence supporting both the conclusions that the conditions leading to V.B.'s placement outside Father's care will not be remedied and that the continuation of the parent-child relationship poses a threat to V.B., Father fails to acknowledge that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that the conditions resulting in placement outside Father's care will not be remedied *or* that the continuation of the parent-child relationship poses a threat to the children. *In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied.* Therefore, where, as here, the trial court specifically finds that there is a reasonable probability that the conditions which resulted in the continued placement of V.B. outside Father's care would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for DCS to prove or for the trial court to find that the continuation of the parent-child relationship poses a threat to the child. *See In re S.P.H.*, 806 N.E.2d at 882. Thus, having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to V.B.'s well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

Having concluded that the evidence was sufficient to prove the statutory requirements set forth in Indiana Code section 31-35-2-4(b)(2) by clear and convincing evidence, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

VAIDIK, J., and CRONE, J., concur.