**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 13 2014, 10:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JERRY T. DROOK**
Marion, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**CHRISTINA D. PACE**
Deputies Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF )
THE PARENT-CHILD RELATIONSHIP OF: )
A.S. and B.S. (MINOR CHILDREN) and )
D.J. (MOTHER) and H.S. (FATHER) )
    Appellants-Respondents, )
         )
        vs. )  No.  85A02-1403-JT-209
         )
THE INDIANA DEPARTMENT OF CHILD )
SERVICES, )
    Appellee-Petitioner. )

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1307-JT-8
Cause No. 85C01-1307-JT-9

**November 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

H.S. ("Father") and D.J. ("Mother") (collectively, "Parents") appeal the termination of their parental rights upon the petition of the Wabash County Department of Child Services ("DCS").  We affirm.

**Issue**

Parents present one issue for review, which we restate as:  whether DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

**Facts and Procedural History**

On July 16, 2012, DCS received a report that two-year-old twin boys, A.S and B.S. (collectively, "Children"), were living with their paternal grandmother in a home that was unfit for human habitation.  That day, DCS and the Wabash County Health Department investigated the home, after which the home was condemned.  During the investigation, DCS determined that Parents knew of the conditions and allowed Children to stay there.  Children were taken into custody and placed in foster care.  Based on the report and investigation, DCS filed a petition alleging that Children were Children in Need of Services ("CHINS").  Parents appeared at the initial CHINS hearing on July 26, 2012, and admitted to the allegations.  Children were adjudicated CHINS on July 30, 2012.

DCS's predispositional report, filed August 6, 2012, showed that Children had serious developmental delays affecting their speech, motor, and social skills.  After an August 17, 2012, hearing, the court entered its dispositional decree on August 22, 2012.  The court ordered that Children remain in foster care, undergo genetic testing, and receive services to address their developmental delays.  The court ordered Parents to participate in home-based

2

services, a parenting assessment, psychological assessments, and supervised visitation. Following the parenting assessment, Parents were referred to individual and couples counseling. Father was referred to father engagement services.

DCS filed a ninety-day progress report on June 28, 2013, covering the period of January 25, 2013, to May 30, 2013. The report showed that Parents inconsistently participated in ordered services and visitation and therefore were not in compliance with the dispositional order. DCS's permanency report, filed July 17, 2013, reaffirmed Parents' noncompliance with the treatment plans and detailed concerns about the suitability of Parents' home. After a hearing on July 26, 2013, the court approved a permanency plan that called for reunification, with a concurrent plan of termination of parental rights and adoption if continuing reunification efforts failed.

DCS filed a verified petition for involuntary termination of parental rights on July 17, 2013. Hearings on the petition were conducted on January 14 and 22, 2014. On February 24, 2014, the court issued an order terminating Parents' parental rights. Parents now appeal.

**Discussion and Decision**

Standard of Review

Our standard of review is highly deferential in cases concerning the termination of parental rights. In re K.S., 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. In re A.A.C., 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-

child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. Id. We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. Id.

Requirements for Involuntary Termination of the Parent-Child Relationship

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A)    that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

(i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a).

## Analysis

Parents contend that insufficient evidence supports the trial court's termination order. They do not challenge the court's determinations under Indiana Code sections 31-35-2-4(b)(2)(A) (removal), (C) (best interests),[1] or (D) (satisfactory plan). Rather, Parents challenge the determination under Section (B), raising objections under both subsections (i) (reasonable probability that the conditions of removal or reasons for placement outside the home will not be remedied) and (ii) (reasonable probability that the continuation of the parent-child relationship poses a threat to the child's well-being).

Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. See L.S., 717 N.E.2d at 209. Because we find

---

[1] Parents briefly mention "best interests" in their Conclusion; however, Parents do not develop an argument or cite any authority related to this prong. Accordingly, this argument is waived. See In re A.N.J., 690 N.E.2d 716, 720 (Ind. Ct. App. 1997).

it dispositive under the facts of this case, we review only whether DCS established, by clear and convincing evidence, that there is a reasonable probability that the conditions that resulted in Children's removal or the reasons for placement outside the home of Parents will not be remedied. See I.C. § 31-35-2-4(b)(2)(B)(i).

We engage in a two-step analysis to determine whether the conditions that led to Children's placement outside Parents' home likely will not be remedied. In re K.T.K., 989 N.E.2d 1225, 1231 (Ind. 2013). First, we ascertain what conditions led to their placement and retention in foster care, and second, we determine whether there is a reasonable probability that those conditions will not be remedied. Id. In making these decisions, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re E.M., 4 N.E.3d 636, 643 (Ind. 2014). However, the court must balance any recent improvements against a parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. Id. "We entrust that delicate balance to the trial court, which has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination." Id. (citing K.T.K., 989 N.E.2d at 1234).

Initially, DCS removed Children because of the deplorable conditions of their grandmother's home, of which Parents were aware. Soon after, DCS became aware of the significant developmental delays Children exhibited, described by Children's foster mother – an early-childhood developmental therapist with over fourteen years of experience – as "the worst case of . . . delays related . . . to neglect I've ever seen." (Tr. at 85.) Children's Court

6

Appointed Special Advocate ("CASA") also opined that their delays were environmental, not genetic.

Yet, Parents did not engage in the court-ordered services with any regularity. Neither Mother nor Father was ever in compliance with the dispositional order. Mother initiated some counseling services, but attended sporadically. Father attended a few individual counseling and father engagement sessions beginning in December 2013 (just prior to the termination hearing), but otherwise failed to engage these services during the year and a half that Children had been removed. Overall, Parents missed forty percent of their supervised visits with Children between July 2012 and July 2013, and attended only three to five visits each from July 2013 until the termination hearing. Over the course of Children's removal, DCS at times went without contact from Parents for approximately two months.

As to the effect of Parents' noncompliance, DCS Family Case Manager Sara Cole testified that "with the little compliance that we have had, we have not been . . . able to ensure that the parents understand what led to those conditions [that resulted in removal] and understand the ways to make sure that that's not going to happen again with their kids . . . ." (Tr. at 103-04.) The evidence thus shows that Parents have not complied with court-ordered services that were specifically designed to remedy the environmental factors that contributed to Children's severe developmental delays. To the extent Parents point to changes in the house and their belated engagement in services, we decline their request to reweigh evidence. See K.T.K., 989 N.E.2d at 1234; E.M., 4 N.E.3d at 643. There is clear and convincing evidence to support the court's conclusion that there is a reasonable probability that the

conditions that led to removal or reasons for placement outside Parents' home will not be remedied.

## Conclusion

DCS established, by clear and convincing evidence, the requisite elements of Indiana Code section 31-35-2-4(b)(2). Accordingly, the trial court's judgment of involuntary termination of the parent-child relationship was not clearly erroneous.

Affirmed.

NAJAM, J., and PYLE, J., concur.