Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Sep 15 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEPHANIE L. NEMETH**
Wandling & Associates
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION OF THE )
PARENT-CHILD RELATIONSHIP OF S.F. and A.D., )
)
T.F., )
)
 Appellant-Respondent, )
)
   vs. )   No. 71A03-1402-JT-68
)
INDIANA DEPARTMENT OF CHILD SERVICES, )
)
 Appellee-Petitioner. )

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
Cause Nos. 71J01-1301-JT-5 and 71J01-1301-JT-6

**September 15, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

T.F. ("Father") appeals the trial court's termination of his parental rights over his minor children S.F. and A.D. ("the children"). Father raises a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the termination of his parental rights.

We affirm.

## FACTS AND PROCEDURAL HISTORY

K.D. ("Mother")[1] gave birth to S.F. on July 6, 2009, and A.D. on September 3, 2011. Father is the children's father.[2] After A.D. tested positive for cocaine at birth, on September 7, 2011, DCS filed verified petitions alleging that both children were children in need of services ("CHINS"). Following a hearing, the trial court found that the children were CHINS and granted temporary wardship of the children to DCS.[3] Father was incarcerated in Texas at that time.

On October 5, the trial court held a dispositional hearing and ordered that: the children be placed in foster care; Father establish paternity over the children; and Father contact DCS within twenty-four hours of his release from prison. On February 1, 2012, the trial court ordered that the children be placed with their aunt S.R. On August 8, following a twelve-month permanency hearing, the trial court approved concurrent

---

[1] Mother does not participate in this appeal.

[2] Mother and Father were unmarried when the children were born.

[3] A.D. was placed in the intensive care unit of a hospital for treatment of "withdrawal symptoms from cocaine." Appellant's App. at 20.

2

permanency plans of reunification with Father "upon his release from custody if he complies with services" and adoption. Pet. Ex. B.

On February 4, 2013, DCS filed petitions to terminate the parents' parental rights to the children. And in a progress report dated February 5, Sheila LeSure, DCS case manager, stated in relevant part as follows:

> Since his return to the community after his release from Federal prison in November [2012], [Father] has complied with the terms of his parole, maintained consistent contact with DCS, obtained employment, adequate housing and consistently participated in visitation with the children. He is currently participating in a drug treatment program at Oaklawn. [Father] has yet to legally establish paternity for [A.D.] in the State of Indiana although he provided a notarized statement of paternity while in prison and [Mother] acknowledged prior to his release that he is the father. [Father] has not found a sponsor for his after care in drug treatment and has not demonstrated emotional stability at this time.
>
> * * *
>
> [Father] has visited the children very consistently with one cancellation due to illness.
>
> * * *
>
> No additional services are being requested [for Father] at this time. [Father] should complete the services already in place.[4]

Pet. Ex. C.

On June 10, 2013, Father was arrested for domestic battery. At the time of his arrest, DCS was about to start a trial in-home visit for the children with Father. Because of his arrest and subsequent incarceration, on July 31, the trial court approved a permanency plan for both children of adoption by S.R. Following a hearing on January

---

[4] DCS recommended that Father undergo drug treatment and aftercare.

3

24, 2014, the trial court terminated the parental rights of Mother and Father over the children and entered the following relevant findings and conclusions:

> 3. Mother and father failed to comply with the orders in the Dispositional decree;
>
> * * *
>
> 5. Father, [A.F.], appeared [at] trial on January 24, 2014 and was represented by counsel;
>
> * * *
>
> 8. Father is now incarcerated and has failed to comply with the orders of the Court;
>
> 9. Father was mostly in compliance with the Dispositional Order when released from incarceration;
>
> 10. Father has a history of incarceration that had led to his incarceration for more than eight (8) of the previous twelve (12) years;
>
> 11. Father served a sentence and is currently a parolee of the State of Michigan until May of 2021;
>
> 12. Father described this Michigan offense as having occurred while he was a drug addict and that [ha]s also resulted [in] father being ordered to pay a large restitution order;
>
> 13. Father served a federal sentence in Texas and is currently on a federal detainer that appears [to] present the possibility of some additional sentence;
>
> 14. Father owes support for an older child with another mother and has not been able to contact the child due to incarceration;
>
> 15. Father became involved in many programs while in federal custody;
>
> 16. Father's compliance is troubling to the court as father testified that when housing and transportation were a concern he acted in what appears to be a rash manner that do not seem to adequately consider his children;

1[7]. Father testified that when asked to buy a car he bought more than one;

1[8]. Father testified that the relationships with the mothers of his children is not good and often troubled by drug usage;

1[9]. DCS Family Case Manager, Sheila LeSure, indicated that Father was cautioned that the relationship that he was involved in while out of custody in this matter was concerning and seemed to jeopardize his ability to comply with the Dispositional Order in the "CHINS" proceeding;

[20]. Father continued the relationship;

[21]. Father is now in the custody of the Saint Joseph County Sheriff awaiting trial on domestic violence charges;

[22]. The victim is the person with whom father had the relationship that concerned DCS;

[23]. The Court now finds that the child[ren were] removed for fifteen (15) out of twenty-two (22) months;

[24]. The Court now finds that the reasons for the removal of the child[ren] are unlikely to be remedied and are likely to pose a harm to the child[ren] if allowed to continue;

* * *

[26]. The Court now finds that the father has not been and is not in compliance with the dispositional order of the Court;

[27]. The Father was not able to remain out of jail or prison and has displayed a habit of criminal activity;

[28]. Father testified that he would neither be convicted nor face any additional time on the cases on which he is currently on parole and detainer but was unable to produce either testimony or evidence that Michigan or the United States of America were discharging him from parole or probation;

[29]. The Court finds that the child[ren have] been removed pursuant to a dispositional order for fifteen (15) of twenty-two (22) months;

[30]. While the father has shown short periods of improvement he has not demonstrated that he is likely to remain out of custody or control of the jurisdictions that now order his incarceration. Therefore the Court finds that the reasons that led to the removal of the Child[ren] are unlikely to be remedied and are likely to pose a harm to the child[ren] if allowed to continue;

[31]. The Court now grants the TPR as to the father.

Appellant's App. at 13-14. This appeal ensued.

## DISCUSSION AND DECISION

We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." Bailey v. Tippecanoe Div. of Family & Children (In re M.B.), 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), trans. denied. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. Schultz v. Porter Cnty. Ofc. of Family & Children (In re K.S.), 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. Id. at 836.

Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

* * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).[5] That statute provides that DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.), 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2).

When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. Peterson v. Marion Cnty. Ofc. of Family & Children (In re D.D.), 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. Judy S. v. Noble Cnty. Ofc. of Family & Children (In re L.S.), 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). trans. denied.

---

[5] Indiana Code Section 31-35-2-4(b)(2)(B) also allows DCS to allege that "[t]he child has, on two (2) separate occasions, been adjudicated a child in need of services." But that additional, alternative provision is not relevant here.

Here, in terminating Father's parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. Bester v. Lake Cnty. Ofc. of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. In re L.S., 717 N.E.2d at 208.

We first address Father's contention that the trial court's findings of fact and conclusions thereon are lacking because the trial court did not specifically conclude that termination was in the children's best interests and that there was a satisfactory plan for the care and treatment of the children. Again, Indiana Code Section 31-35-2-4(b)(2) requires DCS to prove both elements by clear and convincing evidence. We have held that, although trial courts are not statutorily required to enter findings of fact and conclusion thereon in termination of parental rights cases, "the rights involved are of constitutional magnitude," and "a judgment terminating the relationship between a parent and child is impossible to review on appeal if it is nothing more than a mere recitation of the conclusions the governing statute requires the trial court to reach." In re A.K., 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). Thus, we require trial courts to "enter findings of fact that support the entry of the conclusions called for by Indiana statute and the common law." Id.

8

But in In re M.W., 943 N.E.2d 848, 854 (Ind. Ct. App. 2011), trans. denied, we clarified that, in A.K., "the trial court's order merely recited the statutory requirements for termination and did not include any findings of fact to support those conclusions. We remanded to the trial court for the entry of factual findings to support the order." And we distinguished A.K. from M.W. in that, "unlike in A.K., the trial court did enter findings of fact and merely failed to include a statement that termination was in M.W.'s best interest." Id. We held that,

> [d]espite the trial court's failure to state this conclusion in its order, given the trial court's findings of fact and ultimate grant of termination, we have enough information to review the trial court's termination of Father's parental rights on appeal. Consequently, we will address Father's other arguments rather than remand for the entry of a new order.

Id. Likewise, here, despite the trial court's failure to enter conclusions on the best interests or satisfactory plan elements of the statute, given the court's findings of fact and ultimate grant of termination, we have enough information to review the court's termination of Father's parental rights on appeal.

**Conditions Resulting in Removal Will Not Be Remedied**

Father contends that DCS failed to establish by clear and convincing evidence that the conditions resulting in the children's removal from his care will not be remedied or that the continuation of the parent-child relationships poses a threat to the children. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court need only find either that the conditions resulting in removal will not be remedied or that the continuation of the parent-child relationship poses a threat to the children. Therefore, where, as here, the trial court specifically finds that there is a reasonable

9

probability that the conditions which resulted in the removal of the children would not be remedied, and there is sufficient evidence in the record supporting the trial court's conclusion, it is not necessary for DCS to prove or for the trial court to find that the continuation of the parent-child relationships poses a threat to the children. See In re S.P.H., 806 N.E.2d 874, 882 (Ind. Ct. App. 2004).

In his brief on appeal, Father does not describe the conditions that resulted in the removal of the children from his care. The CHINS petitions state that the children were removed because A.D. was born with cocaine in his system, and Father was incarcerated at that time. Accordingly, Father addresses this issue as referring to his ability to provide a safe and stable home for the children, which he was unable to do at the time they were removed from Mother's care. When assessing whether a reasonable probability exists that the conditions justifying a child's removal and continued placement outside the parent's care will not be remedied, the trial court must judge the parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions. See In re A.N.J., 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The trial court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. Id. A trial court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. McBride v. Monroe Cnty. Off. of Family & Children, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

Here, the trial court found that DCS presented sufficient evidence to prove that the conditions that resulted in the children's removal from their parents' home were not likely to be remedied, and upon review, we conclude that the court's finding is supported by clear and convincing evidence. The record reveals that Father has been incarcerated more than not during the children's lives. Indeed, Father was incarcerated both at the time the children were adjudicated to be CHINS and at the final termination hearing. Moreover, at the final termination hearing, Father, who was still on parole under the jurisdictions of both a federal court and a Michigan court, could only speculate whether he would be convicted of a recent domestic battery charge and serve even more time in prison. We reject Father's contention that DCS had to prove that his "incarceration at the time of trial would last any substantial time." Appellant's Br. at 15. Father's criminal history and pending charge at the time of the termination hearing support a reasonable inference that Father is likely to remain incarcerated for the foreseeable future and will be unable to care for the children. And Father's insistence that his "past pattern of criminal history was due to a drug addiction that he no longer had" is unpersuasive given his June 2013 arrest, while on parole, and prosecution for domestic battery. Id.

Case manager LeSure testified regarding Father's pattern of instability in relevant part as follows: despite the requests of LeSure and Father's therapist that he not become involved in any personal relationships so as to interfere with his ability to care for the children, Father engaged in a personal relationship with a high-risk woman, whom he ultimately impregnated; when DCS asked Father to obtain reliable transportation, he bought four cars even though he does not have a valid driver's license; Father was about

11

to begin a trial in-home visit with the children when he was arrested for domestic battery in June 2013; Father never established paternity of A.D.; and Father was unable to participate in family therapy because of his incarceration.

When considered as a whole, the evidence is sufficient to demonstrate a reasonable probability that the conditions which resulted in the children's removal from the parents' home will not be remedied. Given Father's criminal history, repeated incarcerations, and failure to show the court that he would be released from incarceration at any date certain, Father has not demonstrated that he would be able to provide adequate care or permanency for the children in the future. Accordingly, we agree with the trial court that the termination of Father's parental rights over the children was appropriate under Indiana Code Section 35-35-2-4(b)(2)(B)(i).

**Best Interests**

Father also contends that termination is not in the children's best interests. In support of that contention, Father cites to this court's opinion in Rowlett v. Vanderburgh County Off. of Family & Children, 841 N.E.2d 615 (Ind. Ct. App. 2006), trans. denied. But in that case, the father had a release date certain only six weeks after the termination hearing. And, on appeal, this court held that there was "little harm in extending the CHINS wardship until such time as Father has a chance to prove himself a fit parent for the children." Id. at 623. Because Father in this case had no release date certain at the time of the termination hearing, we do not find Rowlett persuasive here.

In determining whether the termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. A.K., 924 N.E.2d

12

at 224. "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best interests." Castro v. State Office of Family & Children, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), trans. denied. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." A.K., 924 N.E.2d at 224.

As we have already discussed above, Father has demonstrated both a current and an historical inability to provide adequate housing, stability, and supervision due to his criminal history and poor decision-making. And case manager LeSure testified that termination of Father's parental rights is in the children's best interests. Again, Father's contention on this issue amounts to a request that we reweigh the evidence, which we will not do. We agree with the trial court that the termination of Father's parental rights over the children was appropriate under Indiana Code Section 35-35-2-4(b)(2)(C).

**Satisfactory Plan**

In order for the trial court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the child. In re S.L.H.S., 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. Id. Here, the evidence is sufficient to support the trial

13

court's conclusion that DCS has a satisfactory plan for the care and treatment of the children, namely, adoption.  See id.

Affirmed.

BAILEY, J., and PYLE, J., concur.