## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 03 2017, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Matter of the Termination of the Parent-Child Relationship of: D.D., N.R., and T.R., Jr. (Minor Children) <br><br> and <br><br> K.R. (Mother) and T.R. (Father), <br> *Appellants-Respondents,* <br><br> v. <br><br> Indiana Department of Child Services, <br> *Appellee-Petitioner.* | May 3, 2017 <br><br> Court of Appeals Case No. 34A05-1612-JT-2878 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Trial Court Cause Nos. <br> 34C01-1608-JT-249 <br> 34C01-1608-JT-250 <br> 34C01-1608-JT-251 |

**Bradford, Judge.**

# Case Summary

[1] Appellants-Respondents K.R. ("Mother") and T.R. ("Father") (collectively, "Parents") appeal the juvenile court's order terminating their parental rights to D.D., N.R., and T.R., Jr. (collectively, "the Children"). On September 8, 2014, Appellee-Petitioner the Indiana Department of Child Services ("DCS") filed petitions alleging that the Children were children in need of services ("CHINS"). Following an evidentiary hearing, the Children were adjudicated to be CHINS. Parents, both of whom were incarcerated at the time of the CHINS hearing, were ordered to participate in and complete certain services. Parents failed to complete the court-ordered services following their releases from incarceration.

[2] DCS filed petitions seeking the termination of Parents' parental rights to the Children on August 18, 2016. Following an evidentiary hearing, the juvenile court issued an order granting DCS's petitions. On appeal, Parents contend that DCS did not provide sufficient evidence to support the termination of their parental rights. We affirm.

# Facts and Procedural History

[3] Father and Mother are the biological parents of D.D., who was born on May 20, 2003, N.R. who was born on October 2, 2006, and T.R., Jr. who was born on December 29, 2011. DCS substantiated claims against Parents for the

educational neglect of D.D. and N.R. in December of 2012. DCS subsequently substantiated claims of neglect of the Children in August of 2013.

[4] DCS again became involved with the family on September 14, 2014. Upon making contact with the family, a representative of DCS made the following observations:

> The home was found to have no running water, no food, no means to cook or produce food (i.e. no stove, oven, microwave, and refrigerator) and the family was defecating in a bucket in the bathroom. The home was in the process of being remodeled and presented several health/safety concerns; there was clutter in the form of trash, insulation, removed plaster and lathing, power tools on the floor, exposed wiring, and various components for methamphetamine production were also discovered in the home. While the children appeared generally healthy, all three were suffering from small bite marks that appeared to be bug bites. It was observed that [T.R., Jr.,] was dressed only in athletic shorts with no shoes, shirt, underwear or diaper and had blisters on his feet that were in the process of healing. The two older children had been withdrawn from school in February 2014 and were not currently enrolled. While [D.D.] and [N.R.] both reported that they were homeschooled, neither child could report on what they were currently learning.

Petitioner's Ex. 1, p. 1. On this date, Parents were arrested for manufacturing methamphetamine, possessing an illegal drug lab, and neglect of a dependent. The Children were removed from the home and taken to the hospital for examination. Hair samples from D.D. and T.R., Jr. "were found to be positive for methamphetamine and amphetamine." Petitioner's Ex. 1, p. 2. T.R., Jr.'s hair sample "had drug levels consistent with levels of everyday exposure."

Petitioner's Ex. 1, p. 2. The Children were subsequently placed together in foster care.

[5] DCS filed petitions alleging that the Children were CHINS on September 8, 2014. Following a fact-finding hearing, the juvenile court found the Children to be CHINS on November 3, 2014. Specifically, the juvenile court found as follows:

> The Parents stipulate that the [C]hildren are in need of services due to their arrest and incarceration. The Intake Officer's Report of Preliminary Inquiry is incorporated. Specifically, on September 4, 2014, the Kokomo Police Department (KPD) located items used in the manufacturing of methamphetamine in the home that the Parents and the [C]hildren were residing in. The Parents were arrested on charges for Manufacturing Methamphetamine, Illegal Drug Lab, and Neglect of a Dependent. The [C]hildren's Parents knew or should have known that illegal substances were being used and manufactured at the residence and failed to protect the [C]hildren. Further, the home was found to be unsafe and unsanitary for the [C]hildren.

Petitioner's Ex. 4, p. 22.

[6] In a subsequent dispositional order, the juvenile court ordered that Parents shall: (1) cooperate with DCS, its Family Case Managers ("FCMs"), and any service providers, including but not limited to following their recommendations; (2) notify DCS, the FCMs and any service providers in any change to their contact information; (3) maintain contact with their assigned FCM and service providers, including notifying them of cancellations of appointments at least twenty-four hours prior to the scheduled appointment; (4)

attend, participate in the visitation plan and follow the rules and procedures set forth by DCS and any service providers coordinating and/or supervising the visits; (5) submit to random drug and alcohol screens at the discretion of DCS or its service providers and any unexcused failure to submit to the drug screen shall be deemed a failed test; (6) attend, participate in and successfully complete a mental health evaluation and follow all the recommendations of the evaluator and DCS based on the evaluation, including any after-care programs if deemed necessary; (7) obtain clean, suitable and stable housing for themselves and their children and allow DCS and its service providers access to the home; (8) obtain and maintain gainful employment and provide pay stubs or other evidence to DCS; (9) attend, participate in and successfully complete a parenting program and provide proof of completion to DCS and demonstrate effective parenting skills and abilities in the care of the Children; (10) attend, participate in and successfully complete a parenting evaluation and follow all of the recommendations of the evaluator and DCS based on the evaluation; (11) refrain from all illegal activity and abide by the laws of the State of Indiana and the United States so as to not jeopardize their ability to care for the Children; and (12) keep DCS updated as to the status of any pending or current criminal charges. The trial court further ordered that any visits with the Children shall be subject to Parents providing DCS with a negative drug and alcohol screen at the discretion of DCS or the service provider coordinating or supervising the visitation plan.

[7] On January 18, 2016, DCS filed petitions seeking the termination of Parents' parental rights to the Children. The juvenile court conducted an evidentiary hearing on DCS's petitions on November 14, 2016. During the evidentiary hearing, DCS presented evidence indicating that Parents had failed to refrain from using illegal drugs. In fact, Parents were incarcerated as of the date of the evidentiary hearing because their continued drug use had led the prosecution in each of their ongoing criminal cases to seek to revoke their probation. Parents had also failed to obtain suitable housing, complete necessary services, or consistently communicate with service providers. Given Parents' failure to refrain from using illegal drugs, to obtain suitable housing and to complete necessary services, two separate DCS FCMs who had worked with the family and the Children's Court Appointed Special Advocate ("CASA") concluded that termination of Parents' parental rights was in the Children's best interests.

[8] Following the conclusion of the hearing, the juvenile court took the matter under advisement. On December 5, 2016, the juvenile court issued an order terminating Parents' parental rights to the Children. This appeal follows.

# Discussion and Decision

[9] Parents contend that the evidence is insufficient to sustain the termination of their parental rights to the Children. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child

relationship is "one of the most valued relationships of our culture." *Id.* However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their responsibility as parents. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied.* Therefore, parental rights are not absolute and must be subordinated to the children's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id.*

[10] The purpose of terminating parental rights is not to punish the parents but to protect the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[11] Parents contend that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating their parental rights. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we

must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[12] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[13] In order to involuntarily terminate parents' parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
>> (i) the child[ren] [have] been removed from the parent[s] for at least six (6) months under a dispositional decree;
>> (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
>> (iii) the child[ren] [have] been removed from the parent[s] and [have] been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child[ren] [are] removed from the home as a result of the child[ren] being alleged to be [ ]

> child[ren] in need of services or [ ] delinquent
> child[ren];
>
> > (B) that one (1) of the following is true:
> >
> > > (i) There is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied.
> > > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren].
> > > (iii) The child[ren] [have], on two (2) separate occasions, been adjudicated [ ] child[ren] in need of services;
> >
> > (C) termination is in the best interests of the child[ren]; and
> > (D) there is a satisfactory plan for the care and treatment of the child[ren].

Ind. Code § 31-35-2-4(b)(2). Parents do not dispute that DCS presented sufficient evidence to support the first, third, and fourth elements set forth in Indiana Code section 31-35-2-4(b). Parents, however, do claim that DCS failed to establish that there is a reasonable probability that the conditions that resulted in the children's removal will not be remedied.

## A. Whether Conditions Will Be Remedied

[14] On appeal, Parents argue that DCS failed to establish by clear and convincing evidence that the conditions leading to the Children's removal from their home would not be remedied. It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that (1) the conditions resulting in removal from or continued placement outside the parents' home will not be remedied, (2) the continuation of the

parent-child relationship poses a threat to the children, *or* (3) the children have been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied.* Therefore, where the juvenile court determines one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See generally In re S.P.H.*, 806 N.E.2d at 882 (providing that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS need only prove and the juvenile court need only find that one of the factors listed in that sub-section is true).

[15] We must note that Parents do not challenge the trial court's determination that the continuation of the parent-child relationship poses a threat to the Children. Consequently, Parents have, in effect, conceded that the record contains sufficient proof to satisfy the requirements of Indiana Code section 31-35-2-4(b)(2)(B). However, given that this case involves the permanent termination of Parents' parental rights to the Children, we will nonetheless address Parents' claim relating to the sufficiency of the evidence to prove that the conditions which led the Children's removal will not be remedied.

[16] In order to determine whether the conditions will be remedied, the juvenile court should first determine what conditions led DCS to place the children outside of their parents' care or to continue the children's placement outside their parents' care, and, second, whether there is a reasonable probability that

those conditions will be remedied. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*; *In re S.P.H.*, 806 N.E.2d at 882. When assessing whether a reasonable probability exists that the conditions justifying the children's removal or continued placement outside their parents' care will not be remedied, the juvenile court must judge the parents' fitness to care for the children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parents' habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

[17] A juvenile court may properly consider evidence of the parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id.* (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)). The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the [parents'] behavior will not change." *In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[18] In the instant matter, the juvenile court determined that DCS presented sufficient evidence to prove that it was unlikely that the reasons for the

Children's removal from and continued placement outside of Parents' care would be remedied, and upon review, we conclude that the juvenile court's determination in this respect is supported by the record. In support of its determination, the juvenile court found as follows:

> The Court finds by clear and convincing evidence that it is reasonably probable that the conditions that led to the removal and that led to continued placement outside the home, namely the parents' inability to provide the [Children] with a safe, suitable home with adequate supervision and free of substance abuse, will not be remedied to the degree that they will be able to provide the [Children] with the nurturing, stable, and appropriate care and environment that they require on a long term basis. After well over a year outside of incarceration, the parents failed to work towards lasting sobriety and stability, and both parents find themselves back in the criminal justice system. The children should not have to wait to have a secure, stable and safe environment in which to live. The court need not wait until [the Children are] irreversibly harmed such that [their] physical, mental and social development is permanently impaired before terminating a parent-child relationship. [*In Re M.M.*, 733 N.E.2d 6 (Ind. Ct. App. 2000)].

Appellants' App. Vol. II Confidential, pp. 26-27. This finding is consistent with the juvenile court's other findings relating to Parents' failure to acquire suitable housing, inability to provide appropriate care for the Children, and failure to maintain their sobriety. The juvenile court concluded that DCS had established by clear and convincing evidence that the reasons for the Children's removal from and continued placement outside Parents' home would not be remedied.

[19]    In claiming that the evidence was insufficient to support the juvenile court's order terminating their parental rights, Parents challenge the juvenile court's use of the phrase "independent housing" rather than "suitable housing" in its findings. However, regardless of the phrase used by the juvenile court, the record clearly demonstrates that as of the date of the evidentiary hearing, Parents had failed to acquire suitable housing. Parents challenge to the sufficiency of the evidence to support the juvenile court's finding relating to their failure to acquire suitable housing effectively amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

[20]    Parents also challenge the sufficiency of the evidence to support the juvenile court's order by claiming that, although the record clearly indicates that Mother has failed to remain free of drugs, the trial court in her criminal case allegedly found that she should remain on probation despite her relapse into drug use. As such, Parents argue that the juvenile court should not consider Mother's relapse to be evidence that the conditions leading to the Children's removal from Parents' care will not change. However, given the difference in the concerns facing the juvenile and trial courts, we find Parents' argument relating to the differing treatment by the courts to be unpersuasive. Again, Parents challenge to the sufficiency of the evidence at most amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

The records reveal that Parents have demonstrated a pattern of neglect, addiction, and criminal behavior. Parents have failed to take any steps which would reasonably lead one to believe that they will not continue such behaviors in the future. Parents have also failed to take any steps which would indicate that they are willing or able to provide the Children with either appropriate care or a safe and stable living environment. As such, upon review, we conclude that the juvenile court did not err in concluding that the conditions leading to the Children's removal from and continued placement outside Parents' care were unlikely to be remedied. *See In re C.M.*, 675 N.E.2d 1134, 1140 (Ind. Ct. App. 1997).

The judgment of the juvenile court is affirmed.

Najam, J., and Riley, J., concur.