# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 09 2018, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of: M.S., Je.S., and Ja.S. (Minor Children)

and

C.I. (Mother),
*Appellant-Respondent,*

v.

The Indiana Department of Child Services,
*Appellee-Petitioner.*

May 9, 2018

Court of Appeals Case No.
32A01-1711-JT-2582

Appeal from the Hendricks Superior Court

The Honorable Karen M. Love, Judge

Trial Court Cause Nos.
32D03-1611-JT-17,
32D03-1611-JT-18,
32D03-1611-JT-20

**Bradford, Judge.**

# Case Summary

[1] C.I. ("Mother") appeals the juvenile court's order terminating her parental rights to M.S., Je.S., and Ja.S. ("the Children"). The Indiana Department of Child Services ("DCS") became involved in the Children's lives after receiving reports that maternal grandmother, their then-legal guardian, was unable to properly care for them. The Children were subsequently determined to be children in need of services ("CHINS") and Mother was ordered to complete certain services. Mother, however, failed to successfully complete the court-ordered services.

[2] DCS filed a petition seeking the termination of Mother's parental rights to the Children on November 17, 2016. Following a three-day evidentiary hearing, the juvenile court issued an order granting DCS's petition. On appeal, Mother contends that DCS did not provide sufficient evidence to support the termination of her parental rights. Because we disagree, we affirm.

# Facts and Procedural History

[3] Mother and Jo.S. ("Father") are the parents of the Children.[1] M.S. was born on March 7, 2009; Je.S. was born on March 3, 2005; and Ja.S. was born on

---

[1] Father does not challenge the termination of his parental rights to the Children.

February 19, 2004. At some point in 2009, the Children were removed from their parents' care and maternal grandmother was named their legal guardian. DCS became involved with the Children in August of 2015, after receiving reports that maternal grandmother could not properly supervise the Children due to her poor health and the Children's behavioral issues. At the time, Mother's whereabouts were unknown and Father was incarcerated. The Children were removed from maternal grandmother's care and placed together in foster care. They were subsequently found to be CHINS. As a result of the CHINS finding, Mother was ordered to complete a number of services. Mother failed to successfully complete these services.

[4] On November 17, 2016, DCS filed a petition seeking the termination of Mother's parental rights to the Children. The juvenile court conducted a three-day evidentiary hearing on DCS's petition on February 16 and 17, 2017, and May 10, 2017. DCS presented evidence indicating that Mother had not made significant progress towards reunification and continued to struggle with sobriety. Numerous service providers testified that Mother's failure to maintain sobriety negatively impacted her ability to care for the Children. DCS also presented evidence that although Mother had secured potentially adequate housing at one point during the proceedings, as of the date of the final hearing, she no longer lived at that residence. Instead, she was living at a residence deemed inappropriate for the Children.

[5] DCS also presented evidence that the Children were currently placed in a secure and stable home environment and had "made huge leaps in their

behaviors" while in the care of their foster parents. Tr. Vol. III, p. 92. It additionally presented evidence that the termination of Mother's parental rights was in the Children's best interests, and its plan was for the Children's current foster family to adopt the Children.

[6] Following the conclusion of the hearing, the juvenile court took the matter under advisement. On October 11, 2017, the juvenile court issued an order terminating Mother's parental rights to the Children.

# Discussion and Decision

[7] The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

# Sufficiency of the Evidence

[8]   Mother contends that the evidence is insufficient to support the juvenile court's order terminating her parental rights to the Children. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[9]   In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id.* A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id.*

[10]   Mother claims that DCS failed to present sufficient evidence to prove by clear and convincing evidence that:

> (B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child[ren]'s removal or the reasons for placement outside the home of the parents will not be remedied[; or]
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[ren].
> \*\*\*\*
> (C) termination is in the best interests of the child[ren.]

Ind. Code § 31-35-2-4(b)(2).

## A. Indiana Code Section 31-35-2-4(b)(2)(B)

[11] On appeal, Mother argues that DCS failed to establish by clear and convincing evidence both that the conditions leading to the Children's removal from her home would not be remedied and that there is a reasonable probability that the continuation of the parent-child poses a threat to the well-being of the Children. It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find either that (1) the conditions resulting in removal from or continued placement outside the parent's home will not be remedied or (2) the continuation of the parent-child relationship poses a threat to the children. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines one of the above-mentioned conditions has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two

conditions listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

### 1. *Whether Conditions Will Be Remedied*

[12]   In order to determine whether the conditions will be remedied, the juvenile court should first determine what conditions led DCS to place the Children outside or to continue the Children's placement outside Mother's care, and, second, whether there is a reasonable probability that those conditions will be remedied. *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*; *In re S.P.H.*, 806 N.E.2d at 882. When assessing the latter, the juvenile court must judge the parent's fitness to care for the children at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re A.N.J.*, 690 N.E.2d 716, 721 (Ind. Ct. App. 1997). The juvenile court must also evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*.

[13]   A juvenile court may properly consider evidence of the parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate employment and housing. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *Id*. (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)). The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not

change." *In re Involuntary Termination of Parent-Child Relationship of Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[14]    With regard to whether the conditions leading to removal would be remedied, the trial court found as follows:

> 208.    Mother has been involved in services with DCS since September of 2015.  Mother is not in any better position to parent the children today than … she was when the children were removed.  Mother has consistently chosen to do what she wants. Mother has continued her use of methamphetamine despite the services she has received.  Mother has refused to consistently provide drug screens.
>
> ****
>
> 213.    Mother's past and continued use of methamphetamine is the best prediction of her future behavior, i.e., she will continue to use.…
>
> 214.    Mother's … use of methamphetamine is a significant and substantive reason the children have continued to be removed from [her] care.  [Mother's] continuing use of methamphetamine has significantly hindered [her] ability to provide [the Children] with appropriate supervision and care.  [Her] inability to achieve and maintain sobriety is a long-term issue.

Appellant's App. Vol. II, pp. 40, 41.  Based on these findings, the trial court concluded that Mother has not "demonstrated the ability or willingness to make lasting changes from past behaviors.  There is no reasonable probability that [she] will be able to maintain sobriety or stable housing for the children in order

to care and provide adequately for the children." Appellant's App. Vol. II, p. 46.

[15] The evidence demonstrates that throughout the underlying CHINS and instant TPR proceedings, Mother has displayed ongoing drug abuse. Mother has been diagnosed with moderate to severe stimulant use disorder, in part because she continues to use illegal substances despite the negative consequences. Dating back to 2015, Mother would sometimes be under the influence of drugs during visitation with the Children. In November of 2016, Mother opted out of the Marion County drug-court program, choosing to serve time in jail rather than remain drug-free. Further, as of the dates of the evidentiary hearing, Mother continued to test positive for drugs, specifically methamphetamine. DCS presented testimony that while using methamphetamine, Mother would not be able to provide appropriate care for the Children.

[16] Further, as of the dates of the evidentiary hearing, the Children were receiving extensive one-on-one services beyond that usually offered by DCS. Mother did not demonstrate an understanding of what these services entailed or why such services were necessary. The Children responded well to these services and, throughout the course of their treatment, had shown great improvement. Mother acknowledged that she was not ready for the Children to be returned to her care and could not provide a time frame for when she thought she would be ready to care for the Children.

[17] It is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Mother. *See generally Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993) (providing that it is for the trier of fact to determine which witnesses to believe or disbelieve). Mother's challenges to the sufficiency of the evidence to support the conclusions of the juvenile court effectively amount to an invitation for this court to reassess witness credibility and reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

[18] Upon review, we conclude that the juvenile court did not err in concluding that the conditions leading to the Children's removal from and continued placement outside Mother's care were unlikely to be remedied. Having concluded that the evidence was sufficient to support the juvenile court's determination, and finding no error by the juvenile court, we need not consider whether the continuation of the parent-child relationship poses a threat to the Children's well-being because DCS has satisfied the requirements of Indiana Code section 31-35-2-4(b)(2)(B) by clear and convincing evidence.

## B. Indiana Code section 31-35-2-4(B)(2)(C)

[19] Mother also argues that DCS failed to establish by clear and convincing evidence that termination of her parental rights is in the Children's best interests. We are mindful that in considering whether termination of one's parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the

evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id*. Furthermore, this court has previously determined that the testimony of the case worker, a guardian ad litem ("GAL"), or a court appointed special advocate ("CASA") regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id*.; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[20] Suzanne Conger, the Children's GAL, testified that termination of Mother's parental rights was in the Children's best interests and additionally that it is in the Children's best interests to be adopted by their current foster family. Conger also testified that she would "have safety concerns for the [C]hildren if they were returned back to [Mother's] care at this time." Tr. Vol. IV, p. 42. DCS Family Case Manager Hannah Lyman agreed and testified that DCS believes termination of Mother's parental rights is in the Children's best interests.

[21] In addition, maternal grandmother testified that she believes the termination of Mother's parental rights is in the Children's best interests. Maternal grandmother acknowledged that although she loves the Children, she is unable to provide adequate care for them because of her poor health and limited financial resources. The trial court explicitly found maternal grandmother to be credible, finding that she "is putting the [C]hildren's needs and best interests above her own desire." Appellant's App. Vol. II, p. 38.

The juvenile court found that the Children require extensive services and that they are thriving in their current foster placement. Numerous individuals testified that they would be concerned about the Children's mental stability if they were removed from their current placement as Mother has shown no ability to comprehend or provide the care and services required by the Children. The juvenile court did not have to wait until the Children were irreversibly harmed such that their physical, mental, and social development was permanently impaired before terminating Mother's parental rights. *See In re C.M.*, 675 N.E.2d at 1140. In light of the above-discussed testimony, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Mother's parental rights is in the Children's best interests. Mother's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

# Conclusion

Having concluded that the evidence is sufficient to support the juvenile court's order terminating Mother's parental rights to the Children, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

Baker, J., and Kirsch, J., concur.